No. 20,473.

THE STATE OF KANSAS, ex rel. MATTIE BOTTS, *Appellee*, v. WARD C. STOUT, *Appellant.*

SYLLABUS BY THE COURT.

1. ILLEGITIMATE CHILDREN—*Minor Defendant—Appointment of Guardian Ad Litem.* In a bastardy proceeding the defendant, a minor, made no application to have a guardian *ad litem* appointed, and on the plaintiff's application after the jury was impaneled and sworn, the court appointed the defendant's father as guardian under the provisions of the civil code (§ 32). *Held,* not error.

2. SAME — *Material Evidence in Rebuttal — Defendant's Right to Rebut the Same.* It is within the discretion of the trial court to admit in rebuttal facts which should have been offered in chief, and even to reopen the case at any time before final submission and permit either side to offer evidence. Whether in a bastardy proceeding it is material error for the court to permit the prosecution to introduce in rebuttal evidence which should have been introduced in chief depends upon whether the defendant's rights have been prejudiced. In this case it is held, upon the facts stated in the opinion, that it was reversible error to permit the prosecution to prove material and relevant facts of its case by way of rebuttal and to deny defendant the right to introduce testimony to rebut such material and relevant matter.

3. SAME—*Cross-examination—Relating to Distinct Offense—Collateral Issue—Answer Conclusive on State.* The defendant in a bastardy proceeding was asked on cross-examination, in substance, if he had been guilty of improper conduct with a young girl, not the relatrix, at a time subsequent to the offense upon which the action was based. He denied that he had. *Held,* that the matter was purely collateral, and that the state was bound by his answer, and that it was reversible error to permit the state to contradict his denial by evidence of another and distinct offense.

4. SAME—*Alibi—Instruction.* The defendant having offered some evidence to show that he was away from the neighborhood at and near the date fixed by the relatrix, an instruction upon that issue would have been proper.

The State, *ex rel.*, v. Stout.

5. SAME—*Instruction.* An instruction upon the law with relation to the period of gestation would not have been improper in this case.

6. SAME—*Evidence in Rebuttal.* There was no abuse of discretion or error in permitting the state to offer evidence to rebut the defense of an alibi.

Appeal from Seward district court; GEORGE J. DOWNER, judge. Opinion filed November 10, 1917. Reversed.

*William H. Thompson, Fred Robertson,* both of Kansas City, *J. P. McLaughlin,* of Osage City, *F. S. Macy,* and *E. W. Davis,* both of Liberal, for the appellant.

*Clyde R. Commons, H. A. Gaskill,* both of Liberal, and *J. W. Davis,* of Greensburg, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from the district court in a proceeding in which the defendant was found by a jury to be the father of the bastard child of the relatrix, Mattie Botts.

When her child was born Mattie Botts was but 14 years and 3 months old, and the defendant was then a boy just past the age of 17. Their families lived in the village of Arkalon, and had been neighbors and friends for many years; the Stout family running a store, over which they lived on Main street, in the rear of which was the Botts residence, facing another street.

The child was born March 4, 1915; the trial occurred on the 8th of June, 1915, and the relatrix testified that the only act of intercourse was in the first week of June, 1914, on the back porch of her home, in the evening, about dark, just after her mother had gone into the house.

1. After the jury had been impaneled and sworn and the opening statement of counsel had been made, the court's attention was called to the fact that no guardian *ad litem* had been appointed for the defendant, and the court thereupon appointed his father guardian. The first complaint of error is the failure to make this appointment before the trial commenced. The statute provides that if the infant be of the age of 14 years the appointment may be made upon his application within 20 days after the return of the summons, and that if he neglects to apply the appointment may be made upon

the plaintiff's application. (Civ. Code, § 33.) It would seem in this case that the appointment was made as soon as the court's attention was called to the fact that defendant was a minor. It is inconceivable that any prejudice could have resulted to the defendant by the failure to make an appointment earlier. All of his rights were fully protected so far as a guardian *ad litem* could protect them.

2. One of the principal complaints is that the court abused its discretion in allowing the state to "make its case in chief" by rebuttal evidence. The state produced the evidence of the relatrix to show that the defendant was the father of the child, its birth, and also the testimony of the attending physician, and then rested. The defendant then offered evidence of contradictory statements made by Mattie Botts, which it was claimed showed that the defendant was not the father of the child; her association with other boys at and about the time the child must have been begotten; evidence to show the defendant's good reputation, and in support of an alibi.

The state then introduced evidence, *first*, to contradict the defense of an alibi, and, *second*, testimony which it is claimed was offered for the purpose of impeachment. The matter came about in this way: On cross-examination defendant was asked concerning a conversation he had with Sammie Smedley one night in the early part of June, 1914, after they had gone to bed, concerning defendant's sexual relations with Mattie Botts. The time, place, and conversation were called to his attention. He denied making any such statements. He was also asked concerning another conversation with Sammie Smedley and Johnnie Smedley at the Stout barn in June, 1914, which the state claimed referred to his relations with Mattie Botts. He denied having this conversation. At the close of defendant's testimony the plaintiff called Sammie Smedley, and he was asked to state if at the times and places mentioned these conversations occurred with defendant, the leading question being asked him in each instance, as to the words and language used by the defendant, and his answer to each of the questions was "Yes, sir." Both the Smedley boys were permitted to testify to a statement at Stout's barn, which the defendant had denied on his cross-examination. The defendant claims it was an abuse of discretion to permit the plain-

tiff to make its case in chief by the evidence of the Smedley boys in rebuttal. The state contends that the plaintiff was not making its case in chief by way of rebuttal, but was merely offering the evidence for the purpose of impeaching the defendant, and that the statements of the defendant in conversations wherein the name of the relatrix was mentioned were material and relevant to the issue. On the other hand, the defendant insists that if they were relevant and material they should have been offered in chief, and, further, that when they were offered it was error for the trial court to refuse to permit him to offer evidence to show that the statements were never made.

In the prosecution of a criminal case, or in a bastardy proceeding which possesses many of the elements of a criminal proceeding, the state has the right to select the manner in which its proof shall be introduced, but it should put in all its evidence in chief before it rests. Evidence which would be admissible in chief can not ordinarily be introduced by way of rebuttal. Whether it is material error for the court to permit evidence in rebuttal which should have been introduced in chief depends, of course, upon whether the court has abused its discretion to the defendant's prejudice. It can not be doubted that while making its case in chief, the state might have proved the damaging statements claimed to have been made by the defendant or admissions of his guilt, and it necessarily follows that the orderly course of procedure was reversed in this case. The questions asked of the defendant were no part of his cross-examination, and could be asked only for the purpose of impeaching his credibility as a witness. It is claimed they were collateral and that the state was bound by his answers, but we think they were not collateral in so far as they tended to show admissions of his guilt. They were relevant and material and should have been offered by the state in making its case against the defendant before it rested. We think it very probable that the rights of the defendant may have been prejudiced in this instance, especially as the court refused to permit him to offer evidence in rebuttal. For instance, the defendant offered the testimony of Davie McKee relative to the statements made by the defendant in the conversation at the Stout barn, but the court sustained an objec-

tion on the ground that defendant had no right to offer any evidence in rebuttal, except to impeach the witnesses offered by the state. The objection should have been overruled.

An attempt to avoid the effect of this ruling is made in the briefs of the state on the ground that Davie McKee, in his affidavit filed in support of the motion for a new trial, fixed the date of the conversation at the Stout barn as in July, 1914, while the Smedley boys testified that it occurred in June. From the affidavit of the witness McKee, there can be no question, we think, that this was the same conversation referred to by the Smedley boys; that it was the only time these boys were together in the Stout barn. Besides, so far as the record discloses, the evidence was objected to solely on the ground that the defendant had no right to introduce rebuttal evidence, and not on the ground that McKee's evidence related to a different conversation. It is within the discretion of the trial court to admit in rebuttal facts which should have been offered in chief. This rule appears to be supported by the weight of authority (12 Cyc. 557). It has been held also within the discretion of the trial court to reopen the case at any time before its final submission and permit either the prosecution or the defense to offer evidence; but it has been held that when the prosecution has been permitted to offer new evidence on a material point, after the defendant has closed his case, it is error to refuse defendant permission to call witnesses in rebuttal. (12 Cyc. 561, and cases cited in note.) The ruling of the court will not be ground for reversal unless it appear that the discretion has been abused to the defendant's prejudice. (*Bolen v. The People,* 184 Ill. 338; *People v. Kindra,* 102 Mich. 147.) But where, as in this case, the court has permitted the prosecution to prove material and relevant facts of its case by way of rebuttal which should have been offered in chief, and denies defendant the right to introduce testimony to rebut such material and relevant matter, we think the ruling must be regarded as reversible error. After permitting the state to reopen its case and introduce evidence in chief, it was error for the court to reject the evidence of McKee who, according to the testimony of the Smedley boys, was present when the alleged statements were made.

3. Another complaint of error is the admission of the testi-

The State, *ex rel.*, v. Stout.

mony of Audrey Pinkerton, a girl fifteen years old, who lived with her parents in that neighborhood. She testified that she knew Ward Stout, and in the latter part of July, 1914, while she was riding with him in a buggy he put his arm around her and tried to put his hands on her legs; that she threatened to strike him if he did not desist; that at another time when he was taking her home at night the same thing occurred, and he tried to put his hands on her breasts. This evidence was received over the strenuous objections of the defendant's counsel. The defendant, on his cross-examination, was asked with regard to these occurrences and denied them; he admitted being with the Pinkerton girl at the times and places referred to, but denied any improper conduct. The evidence was offered for the purpose of impeaching his testimony. The defendant objected to the testimony on the ground that it was not impeaching, that it was prejudicial and related to occurrences subsequent to the date of the alleged intercourse with the relatrix. A belated attempt is made in the briefs to excuse the admission of this testimony on the ground that it rebutted the evidence of good character offered by the defendant; and further, that it was admissible to rebut statements made by his counsel in the opening statement to the effect that defendant did not associate much with girls, was not given to running around with them, but was a good, quiet, clean boy. It was also suggested in the briefs that it was permissible in view of certain statements made by defendant's counsel during the examination of another witness, to which reference will presently be made. The general rule is that evidence as to good character must be confined to the general character or reputation. If evidence is admissible to contradict every statement of counsel during the progress of a trial or statements made in the opening remarks to the jury, the trial would be extended to matters wholly collateral and the main issue lost sight of. Besides, the evidence was not introduced for any of these purposes but for the sole purpose of impeaching the testimony of the defendant on cross-examination. It is said to be a fundamental rule that in the trial of a criminal case, evidence that a defendant committed one offense can not be received to prove that he committed another and distinct offense. There are numerous exceptions to this rule,

as where it is necessary to prove a motive or intent, or where there is proof of a conspiracy, evidence of acts which show preparation to commit the crime or preserve its fruits, is admissible. (*The State v. Richmond*, 96 Kan. 600, 152 Pac. 644.) As said in *The State v. Boyland*, 24 Kan. 186, followed and approved in *The State v. Stevens*, 56 Kan. 720, 722, 44 Pac. 992:

"If it was intended thereby to prove the bad character of the defendants by specific acts of indecent conduct, it was inadmissible. If it was sought to show a subsequent assault, it was incompetent. You can not prejudice a defendant by proof of particular acts of crime other than the one for which he is being tried, unless the acts have been committed in the preparation for the crime, or the actual doing of the crime, or in concealing it or its fruits. The evidence offered does not come within these exceptions." (p. 187.)

(See, also, *The State v. Wheeler*, 89 Kan. 160, 165, 166, 130 Pac. 656, and cases cited in the opinion.)

While a bastardy proceeding is a civil action, and under the statute the rules of evidence are the same as in civil cases (Gen. Stat. 1915, § 5119), the reason for the rule adopted in *The State v. Boyland*, supra, is nevertheless persuasive, and we think that the defendant should not be prejudiced by proof of particular acts such as those testified to by the witness Audrey Pinkerton, since the matters she testified to were not in any way connected with the charge against the defendant, and occurred subsequent to the date when the child must have been begotten. Besides, being a collateral matter, the prosecution was bound by defendant's answer. (*State v. McGahey*, 3 N. D. 293; *Stokes v. People of the State of N. Y.*, 53 N. Y. 164.)

The state insists that it was challenged by defendant's counsel to produce the testimony now complained of. During the cross-examination of one of the witnesses who testified to the character and reputation of the defendant, the witness was interrogated as follows:

"Did you ever hear it said that he would take a young girl out and pinch her breasts and feel of her legs? I never did.

"Did you ever hear it said that one time when he was crossing the Cimarron river with a young girl he attacked her, and that she struck him, and said she wished she had thrown him out in the water? No, sir."

Thereupon counsel for the defense said:

"We desire to object to that. Counsel never heard that either. It is entirely false and we object to any such statement being made in the presence of the jury. It is simply made to prejudice this jury."

To which counsel for the state replied that he could cite the name of the girl and could prove the statement was true. Defendant's counsel then demanded that counsel "retract that statement before the jury as being absolutely false and unfounded." No ruling appears to have been made upon this request of defendant's counsel.

The defendant uses the incident to base a claim of improper conduct on the part of counsel for the state and error in the trial court's refusal to sustain an objection to counsel's statement and to instruct the jury to disregard it. The state's contention, if sound, would permit it to take advantage of its own wrong. The remarks were improper, and the court should have prevented their repetition and charged the jury to disregard them. It is argued, however, that the matter can not be regarded as prejudicial because there was so much other testimony upon which the jury were justified in their verdict. Aside from the testimony of the plaintiff, which was denied by the defendant, and the evidence as to damaging statements which the defendant was not permitted to rebut, the evidence was circumstantial; and it was claimed and sought to be shown that some of the witnesses who testified to these statements were personally interested in having the paternity of the child fastened upon the defendant. We can not say that the admission of the testimony was not prejudicial, or that it might not have influenced the jury in arriving at their verdict.

4. The defendant's request for an instruction on the law relating to the defense of an alibi was refused. Ordinarily in cases of this character the defense of an alibi is of very little consequence, but the defendant had offered some evidence to show that he was away from the neighborhood at and near the date fixed by the relatrix, and an instruction upon that issue was proper.

5. The same may be said as to the refusal to instruct on the law with relation to the period of gestation. While the jury, from their own information and knowledge, were doubt-

less fully cognizant of nature's laws on this subject, an instruction of that kind would have been proper.

6. There was no abuse of discretion or error in permitting the state to offer evidence to rebut the defense of an alibi.

There are numerous complaints of error with reference to the admission of evidence offered by one party or the other in so-called rebuttal. However, when the case is tried again and the orderly course of procedure followed in the introduction of evidence, we think these matters will not arise again, and it is not deemed necessary to comment specially upon them.

For the reasons stated, the judgment is reversed and the cause remanded for another trial.